**Affirmed and Memorandum Opinion filed January 14, 2025**



In The

# Fifteenth Court of Appeals

### NO. 15-24-00019-CV

**ARMANDO RAMOS AND SHANNON MARK DOUTHIT, Appellants**

**V.**

**MARVIN DUNBAR, ET AL., Appellees**

**On Appeal from the 506th District Court**
**Grimes County, Texas**
**Trial Court Cause No. 036245**

### MEMORANDUM OPINION

Armando Ramos and Shannon Mark Douthit, inmates confined in the institutional division of the Texas Department of Criminal Justice (TDCJ), sued Marvin Dunbar, Jeania Pegoda, and Hilaria Leon (Prison Officials) alleging that policies governing inmate storage are unconstitutional. The district court dismissed the case pursuant to Chapter 14 of the Civil Practice and Remedies Code.[1] We

---

[1]    *See generally* TEX. CIV. PRAC. & REM. CODE §§ 14.001–.014 (governing civil litigation brought by an inmate who files an affidavit or unsworn declaration of inability to pay costs).

affirm.

## I. Background

At issue here are two TDCJ policies: Administrative Directive 3.72 and Access to Courts 040 (collectively, Policies). The Policies require that an inmate's storage box, which generally has two cubic feet of space,[2] must be at least half full of legal documents for the inmate to qualify for a second storage container.[3] They allege that, in effect, an inmate who wants a second container has "less than one (1) cubic foot" to store his other personal property.[4]

Appellants filed a pro se lawsuit against the Prison Officials alleging that the Policies violate their state and federal constitutional rights to equal protection and reasonable access to the courts.[5] They sought a declaration that the Policies are unconstitutional and an injunction entitling them to additional storage space. Each inmate filed with his suit an unsworn declaration of inability to pay costs and an affidavit listing the ten previous suits filed by one or the other.

After the district court consolidated the cases, the Prison Officials moved to dismiss pursuant to Chapter 14. The Prison Officials argued that appellants' suit had no arguable basis in law and that they failed to properly file affidavits listing

---

[2]    Douthit's container has 2.25 cubic feet of storage space.

[3]    The record reflects that Administrative Directive 3.72 involves the storage restrictions at issue here while Access to Courts 40 provides guidance to TDCJ staff in administering it.

[4]    Appellants have filed a motion asking us to take judicial notice of a document entitled "Inmate Instructions for Subsequent Storage Review." *See* TEX. R. EVID. 201. They argue that this document is significant because it "clearly states" that inmates must "give up half of their personal property storage" to qualify for a second box. We dismiss this request as moot because our analysis below assumes that the Policies have this effect.

[5]    *See* U.S. CONST. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."); TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.").

all their previous filings in compliance with Chapter 14.[6] The district court dismissed the case with prejudice and filed supporting findings of fact and conclusions of law. This appeal ensued.[7]

## II. Discussion

Appellants argue in five issues that their suit is not frivolous and that it should not have been dismissed with prejudice.

### A. Legal Standards

Chapter 14 applies to an action brought by an inmate who claims an inability to pay costs.[8] The inmate must meet certain procedural requirements, including filing an affidavit disclosing any previous pro se actions brought by the inmate.[9] The court may dismiss an inmate's suit for failure to comply with these requirements.[10]

Even if the inmate satisfies these prerequisites, the court may dismiss a suit that it finds is "frivolous or malicious."[11] In determining whether a claim is frivolous, the court may consider, among other things, whether "the claim has no arguable basis in law or in fact."[12] "A claim relying on an indisputably meritless

---

[6]  *See* TEX. CIV. PRAC. & REM. CODE § 14.004 (requiring inmate who is unable to pay costs to file affidavit detailing all previous actions filed pro se).

[7]  Appellants appear here pro se. While "[p]ro se litigants are not exempt from the rules of procedure," *In re S.V.*, 697 S.W.3d 659, 662 (Tex. 2024), we construe pro se pleadings liberally "to obtain a just, fair, and equitable adjudication of the rights of the litigants," *Lance v. Robinson*, 543 S.W.3d 723, 746 (Tex. 2018).

[8]  TEX. CIV. PRAC. & REM. CODE § 14.002(a).

[9]  *Id.* § 14.004.

[10]  *See McLean v. Livingston*, 486 S.W.3d 561, 564 (Tex. 2016) (citing *Pena v. McDowell*, 201 S.W.3d 665, 665–66 (Tex. 2006)).

[11]  TEX. CIV. PRAC. & REM. CODE § 14.003(a)(2).

[12]  *Id.* § 14.003(b)(2).

3

legal theory has no arguable basis in law."[13]

The supreme court has not set out the standard for reviewing Chapter 14 dismissals. Our sister courts tend to apply an abuse-of-discretion standard,[14] while reviewing de novo whether a claim has no basis in law or fact.[15] Without deciding whether this standard is correct, we apply it here.

## B. No Arguable Basis in Law

Appellants argue in their first two issues that the district court erred by concluding that their claims are frivolous because they have no arguable basis in law.[16]

### 1. Equal Protection

First, appellants argue that there is a basis in law for their claim that the Prison Officials violated their state and federal constitutional rights to equal protection.[17] To state a viable equal-protection claim, a plaintiff must first allege that "'equality under the law' has been denied."[18] Unless the classification is based on the plaintiff's "membership in a protected class of sex, race, color, creed, or national origin,"[19] courts will uphold the law as long as it is "rationally related to a

---

[13] *Jackson v. Bell*, 484 S.W.3d 161, 164 (Tex. App.—Amarillo 2015, no pet.).

[14] *Monk v. Massey*, 692 S.W.3d 328, 329 n.2 (Tex. 2024) (Young, J., joined by Busby, J., dissenting from denial of petition for review); *see also Warner v. Glass*, 135 S.W.3d 681, 685 (Tex. 2004) (observing that Section 14.003 "give[s] courts *discretion* to dismiss a 'frivolous or malicious' claim" (emphasis added)).

[15] *E.g., Dove v. State*, 560 S.W.3d 376, 378 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Jackson*, 484 S.W.3d at 164.

[16] *See* TEX. CIV. PRAC. & REM. CODE § 14.003(b)(2).

[17] The same legal standards govern equal protection claims under both constitutions. *Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 923 n.14 (Tex. 2020).

[18] *State v. Loe*, 692 S.W.3d 215, 237 (Tex. 2024).

[19] *Id.*

legitimate governmental purpose."[20]

Appellants argue that heightened scrutiny is appropriate because the United States Supreme Court has held that "those incarcerated wishing to litigate their cases in court" are members of a protected class. But they rely on authorities involving a prisoner's constitutional right of access to the courts.[21] That right derives from constitutional protections for due process and the right to petition rather than equal protection of the laws.[22] Prisoners "wishing to litigate their cases in court" are not a protected class for purposes of equal protection.[23]

Appellants therefore had to plausibly allege the Polices have no rational basis.[24] Under this standard, a "party asserting that a classification is unconstitutional must demonstrate that the action is not rationally related to a legitimate governmental purpose."[25] In conducting a rational-basis review, "we consider whether the challenged action has a rational basis and whether use of the challenged classification would reasonably promote that purpose."[26] These

---

[20] *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015).

[21] *See Lewis v. Casey*, 518 U.S. 343, 350 (1996) (addressing access to law library services by prisoners on lockdown and those who are illiterate or do not speak English); *Bounds v. Smith*, 430 U.S. 817, 821–22 (1977).

[22] *See DeMarco v. Davis*, 914 F.3d 383, 387 (5th Cir. 2019) ("Prisoners have 'a constitutionally protected right of access to the courts' that is rooted in the Petition Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment."); *accord In re A.J.*, 559 S.W.3d 713, 719 (Tex. App.—Tyler 2018, no pet.).

[23] *Daker v. Jackson*, 942 F.3d 1252, 1257 (11th Cir. 2019) (noting that "prisoner indigents who frequently file lawsuits do not form a suspect or quasi-suspect class"); *see United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011) ("[N]either prisoners nor persons convicted of crimes constitute a suspect class for equal protection purposes.").

[24] *See Harrell v. Ogg*, 2020 WL 634436, at *3 (Tex. App.—Houston [14th Dist.] Feb. 11, 2020, no pet.) ("Prisoners are not a suspect class and thus we review their claims under the rational-basis test." (quoting *Nabelek v. Bradford*, 228 S.W.3d 715, 719 (Tex. App.—Houston [14th Dist.] 2006, pet. denied))).

[25] *State v. Zurawski*, 690 S.W.3d 644, 670 (Tex. 2024).

[26] *Klumb*, 458 S.W.3d at 13.

determinations "may be based on rational speculation unsupported by evidence or empirical data."[27]

Appellants argue that the Policies constitute "purposeful discrimination" because "other similarly situated incarcerated individuals who request subsequent storage containers for medical, educational or religious purposes do not have to give up 1 cubic foot of their personal storage space." The Prison Officials respond that managing limited space in a prison setting, limiting the amount of property an inmate may accumulate, preventing fires, and reducing burdens placed on prison staff justify the Policies.

We agree with the Prison Officials. The Policies are facially neutral limitations on storage, which it is reasonable to suppose will advance TDCJ's legitimate interests in administering prisons. The Fifth Circuit has repeatedly upheld previously versions of the Policies based on the same justifications the Prison Officials offer here.[28] Guided by those decisions, we conclude appellants have failed to show that there is no rational basis for the Policies.[29]

The district court did not err by concluding this claim has no basis in law. We overrule appellants' first issue.

### 2. Right of Access to the Courts

Appellants argue, in their third issue, that they stated a valid claim that the Policies violate their constitutional right to access the courts.[30] That right

---

[27]     *Id.* (citing *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 308 (1993)).

[28]     *See Guajardo v. Crain*, 275 Fed. App'x. 290, 291 (5th Cir. 2008); *Benavides v. Lynaugh*, 983 F.2d 1064, 1064 (5th Cir. 1993).

[29]     *See Guajardo,* 275 Fed. App'x. at 291; *Benavides*, 983 F.2d at 1064.

[30]     *See Wolff v. McDonnell*, 418 U.S. 539, 579 (1974) ("The right of access to the courts . . . is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights.").

encompasses only "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement."[31] To state a claim for violation of this right, an inmate must allege an "actual injury" stemming from the defendants' conduct.[32]

Appellants make conclusory allegations that the property restrictions violate their right of access to courts because they are involved in multiple litigations that generate a great deal of paper. They do not, however, explain how the storage restrictions impact their ability to carry out that litigation beyond noting the possibility that Prison Officials could confiscate legal paperwork exceeding the storage limit. They do not explain what paperwork is at risk, or whether it includes materials available in the prison library or relating to cases closed many years ago. Absent an allegation of actual prejudice, we conclude that appellants' access-to-courts claim has no basis in law. We overrule appellant's second issue.

### 3. Availability of Declaratory and Injunctive Relief

Appellants argue, in their fourth issue, that the district court erred by concluding that their requested relief is not available against the Prison Officials in their individual capacities.

This is essentially a question of whether appellants have standing. "Standing is a threshold requirement to maintaining a lawsuit."[33] To establish standing, a plaintiff must allege a "concrete injury . . . and a real controversy between the parties that will be resolved by the court."[34] The "resolved by the court" element

---

[31]     *Lewis*, 518 U.S. at 356.

[32]     *See Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citing *Lewis*, 518 U.S. at 351–54); *Conely v. Tex. Bd. of Crim. Just.*, 2011 WL 3890404, at *2 (Tex. App.—Austin Aug. 31, 2011, no pet.).

[33]     *Farmers Tex. Cnty. Mut. Ins. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

[34]     *Id.* (citing *Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012)).

requires a plaintiff to "show that there is a substantial likelihood that the requested relief will remedy the alleged injury."[35]

That likelihood is not present here. State officials may "be sued in both their official and individual capacities."[36] Appellants sued the Prisoner Officials specifically in their individual capacities. They maintain that declaratory and injunctive relief is available in an individual-capacity suit and cite to cases involving claims against individual officials.[37] But the issue is whether such relief would redress the alleged harms. "[J]udgments against state officials in their individual capacities will not bind the state."[38] Binding the State is what appellants seek to do by obtaining declarations that the Policies are unconstitutional and an injunction against enforcing the Policies against them. Appellants lack standing because such relief is unavailable in an individual-capacity suit.[39] We overrule their third issue.

### 4. Right to Amend

Appellants argue in their final issue that the district court abused its discretion by dismissing the case with prejudice. They contend that filing an incomplete affidavit of previous filings is a correctible procedural defect.

While a dismissal for failure to comply with Chapter 14's procedures should be without prejudice, "a dismissal with prejudice is appropriate" if a trial court dismisses a case "based on the conclusion the inmate's claim has no arguable basis

---

[35] *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 485 (Tex. 2018) (citing *Heckman*, 369 S.W.3d at 155–56).

[36] *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.7 (Tex. 2009).

[37] *See, e.g., Pena*, 201 S.W.3d at 665–66; *Caldwell v. Medina*, No. 1:19-CV-524-RP, 2020 WL 4043501, at *6 (W.D. Tex. July 17, 2020).

[38] *See Heinrich*, 284 S.W.3d at 373 n.7.

[39] *See id.*

in law."[40] The district court dismissed their case both for a procedural defect and because it had no basis in law. The district court therefore did not abuse its discretion by dismissing the suit with prejudice.[41]

## III. Conclusion

We affirm the district court's order dismissing the case.


/s/ Scott Brister

Scott Brister
Chief Justice

Before Chief Justice Brister and Justices Field and Farris.

---

[40] *Hosea v. Alamanza*, 659 S.W.3d 129, 134 (Tex. App.—El Paso 2022, no pet.).

[41] *See id*.