[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-13602

Non-Argument Calendar

_____

WASEEM DAKER,

Plaintiff-Appellant,

*versus*

GOVERNOR OF GEORGIA,
GEORGIA SECRETARY OF STATE,
ATTORNEY GENERAL, STATE OF GEORGIA,
STATE OF GEORGIA,
SENTENCE REVIEW PANEL, et al.,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cv-05243-WMR

————————————

Before WILLIAM PRYOR, Chief Judge, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal returns to us after remand to give Waseem Daker, a Georgia prisoner, notice of and an opportunity to respond to the entry of a filing injunction. *Daker v. Governor of Ga.*, 796 F. App'x 720 (11th Cir. 2020). After allowing Daker to show cause why the injunction should not be entered, the district court reimposed its order requiring Daker to post a contempt bond and to append to all future filings a list of his litigation history. We affirm.

We review the imposition of a filing injunction for abuse of discretion. *Miller v. Donald*, 541 F.3d 1091, 1096 (11th Cir. 2008). "A district court abuses its discretion when it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004).

Daker is "a serial litigant who has clogged the federal courts with frivolous litigation by submitting over a thousand *pro se* filings in over a hundred actions and appeals in at least nine different

federal courts." *Daker v. Jackson*, 942 F.3d 1252, 1255 (11th Cir. 2019) (quoting *Daker v. Comm'r, Ga. Dep't of Corr.*, 820 F.3d 1278, 1281 (11th Cir. 2016)) (internal quotation marks omitted and alterations adopted). His litigation stems from his confinement for convictions in 1996 for aggravated stalking and in 2012 for malice murder, burglary, false imprisonment, aggravated battery, and attempted aggravated stalking. Daker years ago accumulated the requisite three strikes to deny him the right to proceed as a pauper. *See* 28 U.S.C. § 1915(g); *Daker*, 942 F.3d at 1256 n.4, 1258–59. But he has devised means to circumvent that limitation on frivolous filings.

To curb Daker's abusive filings, the district court permanently enjoined him "from filing or attempting to file any new lawsuit or petition in [the] Court without first posting a $1,500.00 contempt bond in addition to paying the required filing fee." The district court ordered that, "[i]f any of Daker's future filings is deemed frivolous or duplicative, the presiding judge may impose a contempt sanction against Daker to be paid from the contempt bond" and he would "not be allowed to file any further lawsuits unless and until the contempt bond is replenished to the amount of $1,500.00." "If Daker does not file any cases in [the] Court for a one-year period, the Clerk will return the contempt bond funds to Daker," but he nonetheless must "file a $1,500 contempt bond in connection with any [future] cases he files . . . ." The order also requires Daker to "include with every lawsuit he files *in this or any other court*" a copy of the injunction and a list of every "lawsuit,

habeas corpus petition, and appeal that he has filed in any federal court along with [their] final disposition" or else face a summary dismissal. In the event that Daker is "unable to afford the $1,500.00 contempt bond, he [can] move for modification" so long as his motion includes a "comprehensive accounting of his assets and [an] affirm[ation] that the accounting is true under penalty of perjury."

The district court did not abuse its discretion by entering the filing injunction. "Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions," as is the case when "single litigants . . . unnecessarily encroach[] on the judicial machinery needed by others." *Procup v. Strickland*, 792 F.2d 1069, 1073, 1074 (11th Cir. 1986) (en banc). As the district court stated, Daker's "inability to obtain *in forma pauperis* status" had not curbed "his ability to clog the Court's docket." Daker eluded that protective process by "frivolously assert[ing] that his claims qualify under the 'imminent danger' exception to § 1915(g)" or by paying the required filing fee. Requiring Daker to post a bond and provide detailed information about his past litigation is a permissible next step to combat his vexatious litigation. *See id.* at 1072–73 (providing a non-exclusive list of methods to curtail abusive prisoner litigation). We have approved similar restrictions. *Id.* at 1072 (submitting a litigation history with every pleading); *Copeland v. Green*, 949 F.2d 390, 391 (11th Cir. 1991) (requiring the clerk to mark pleadings "received" instead of "filed" until screened by a judge); *Martin-Trigona v. Shaw*, 986 F.2d 1384, 1387–88 (11th Cir.

1993) (permanently enjoining filings without leave of court and the submission of litigation history).  And the district court protected Daker's right to access the courts by providing the means to litigate nonfrivolous issues if he is indigent.

Daker's challenges to the order lack merit. Daker argues that the district court lacks jurisdiction to order him to report his litigation history to other courts.  But reporting litigation history to other tribunals ensures enforcement of the injunction, which "operate[s] continuously and perpetually upon" and is "binding upon [Daker] . . . throughout the United States." *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932). Daker's argument that a contempt bond is inappropriate because he has not been held in contempt ignores that he has been rebuked repeatedly for abusive filings and has a record of thwarting lesser efforts to curtail his vexatious litigation. The district court reasonably decided to "respond [to Daker's deliberate disobedience of restrictions he knew existed] with imaginative new techniques designed to protect the court access of all litigants" and "to protect itself against the abuses that litigants like [Daker] visit upon it." *Procup*, 792 F.2d at 1073. Daker also argues that the injunction violates his constitutional rights, but his right of access to the courts is "neither absolute nor unconditional," *Miller*, 541 F.3d at 1096. The district court did not abuse its "[c]onsiderable discretion" by "severely restrict[ing] . . . what [Daker] may file and how he must behave in his applications for judicial relief." *Procup*, 792 F.2d at 1074.

We **AFFIRM** the injunction entered against Daker.